UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

| | |
|---|---|
| PHS GROUP INC. | Case No. 811-70413-reg |
| QUALITY FOOD BRANDS, INC. | Case No. 811-72285-reg |

Chapter 7

                            Debtors.
-------------------------------------------------------------------x
Marc A. Pergament, Chapter 7 Trustee of the Estate
of PHS Group Inc.,                                          Adv. Proc. No. 812-8445-reg

                            Plaintiff,
v.

Mair Faibish,

                            Defendant.
-------------------------------------------------------------------x
Marc A. Pergament, Chapter 7 Trustee of the Estate
of Quality Food Brands, Inc.,                            Adv. Proc. No. 812-8444-reg

                            Plaintiff,
v.

Mair Faibish,

                            Defendant.
-------------------------------------------------------------------x

## DECISION AFTER TRIAL

Before the Court are two related adversary proceedings commenced by Marc A. Pergament, the Chapter 7 Trustee ("Plaintiff" or "Trustee") for the bankruptcy estates of PHS Group Inc ("PHS Group") and Quality Food Brands, Inc ("Quality") (collectively, the "Debtors"). The Trustee seeks to recover, pursuant to 11 U.S.C. § 544, damages equivalent to the full amount of claims filed by creditors in the underlying bankruptcy cases from Mair Faibish

("Defendant"), based on a breach by the Defendant of his fiduciary duty to the Debtors. The Defendant failed to appear at the trial on this matter, and the Trustee relied primarily on findings made by the United States District Court for the Eastern District of New York in a criminal proceeding against the Defendant for his role in a check kiting scheme. At the criminal trial, it was shown that Defendant used Synergy Brands Inc., PHS Group and other companies under his control as vehicles to execute a $1.3 billion "check kiting scheme" between April 2007 and October 2009. The criminal trial resulted in the entry of a forfeiture order against the Defendant in the amount of $51,166,000. Based on these findings, and on the uncontroverted evidence introduced at trial, the Court finds in favor of the Trustee on the First Cause of Action for violation of New York Business Corporation Law ("N.Y.B.C.L.") § 720 and the Second Cause of Action for Breach of Fiduciary Duty.[1]  In reaching its decision in this matter, the Court examines whether the principles of collateral estoppel apply to the Defendant's conviction, and if so, does that as a matter of law result in judgment in favor of the Plaintiff? Here, the Plaintiff argues that by committing the acts for which he was found guilty, the Defendant breached his fiduciary duty to the Debtors. This resulted in the alleged damages to the Debtors. For the reasons set forth in this decision, judgment shall be entered against the Defendant in the amount of the allowed claims filed by the creditors in each case upon completion of the claims objection process in each case.

## PROCEDURAL HISTORY

On January 28, 2011, PHS Group filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On April 5, 2011, an involuntary petition under Chapter 7 of the

---

[1] The Trustee did not present a case regarding the third cause of action based on the Defendant's alleged negligence.

2

Bankruptcy Code was filed for Quality by petitioning creditors, Lloyd I. Miller III, Milfam I LP and Signature Bank. On December 18, 2012, the Trustee for the estates of PHS Group and Quality filed substantially similar and related adversary cases against Mair Faibish and others[2] in both of the underlying bankruptcy cases. Mair Faibish's only affirmative action in the case has been to file answers to the complaints in both cases on February 14, 2013. On March 12, 2015, the Court held a trial on both adversary proceedings and the only party to appear before the Court was the Plaintiff.  At trial, all exhibits produced by the Plaintiff were entered into evidence.

## FACTS

Synergy Brands Inc. ("Synergy") is a Delaware corporation with its principal place of business in Syosset, New York. Synergy was a holding company that operated principally through its wholly owned subsidiary PHS Group.  PHS Group was engaged in the wholesale distribution of baking mixes, spices, packaged meals and groceries throughout the United States. Quality was a wholly owned subsidiary of PHS Group engaged in the manufacture and distribution of baking mixes, spices and other food products throughout the United States. A few months after Synergy and PHS Group filed chapter 7 bankruptcy petitions, several of Quality's creditors filed an involuntary petition for relief under chapter 7 on April 5, 2011. The Defendant was the Chief Executive Officer of Synergy and PHS Group and the President of PHS Group. The Plaintiff alleges that the Defendant was the President of Quality but the Defendant denies this allegation in his answer. (Doc. 8 in 12-08445 at para. 4) The Court takes judicial notice of a deposition of Richard Cohen taken on October 1, 2014 (Adv. Proc. No. 13-8085, dkt no. 46, Ex.

---

[2] This opinion does not make any findings as to or address claims made against Mitchell Gerstein, Amton, Inc, Ernest Barbella, and Marguerite Barbella.

2 ("Cohen Deposition Tr.")). Cohen, the President of Quality from 2007 through 2010, testified that while he was the President of Quality, he took direction from the Defendant (Cohen Deposition TR., p. 9, 10, 21, 32). Based on the deposition testimony of the President of Quality, the Court concludes that the Defendant controlled Quality during the time periods relevant to this adversary proceeding.

On April 12, 2012, the Defendant was indicted, *inter alia*, for the crime of bank fraud in the United States District Court for the Eastern District of New York. The Defendant and others orchestrated a check kiting scheme, utilizing several companies they controlled in the United States and Canada, to circulate checks for which there were insufficient funds in order to take advantage of instantaneous cash availability privileges from various banks. From April 2007 through October 2009, the Defendant and others caused about $750,000,000 worth of checks to be made payable to Canadian companies, where the longer clearance time for the presentment of checks between Canada and the United States permitted the funds from the deposited checks to be available before it was discovered that the companies, including Quality and PHS Group, had insufficient funds in their accounts to cover the checks. Immediately after the checks were deposited in the Canadian companies' accounts, the Canadian companies would issue checks to the Debtor companies which would then be immediately deposited into various American bank accounts held by the Debtor companies. By operating the scheme between two different countries, the Defendant and his accomplices were able to take advantage of the longer clearance time for the presentment of checks. So long as checks kept moving, "with the window dressing of instant availability, and within the ordinary check clearance float, detection by the banks would be exceedingly difficult." *United States v. Faibish*, No. 12-CR-265 ENV, 2014 WL 4273299, at *1 (E.D.N.Y. Aug. 28, 2014). As a result of this scheme, the companies' account

balances were inflated, which resulted in a fraud on the investors and shareholders of the companies in question. The checks were also falsely recorded on the Debtor corporations' ledgers as "pre-paid vendor expenses, flour inventory and/or account receivables" but these items did not actually exist. (Complaint, doc. 1 No. 12-08444 at para. 32). As a result, the Defendant created millions of dollars in fictitious receivables and revenue, fraudulently increasing the Debtors' value. Around October 2009, the banks holding the Debtors' accounts discovered that funds in the amount of $23,000,000 that had been made available for withdrawal were never credited or had the credit reversed by the Canadian banks. On March 14, 2014, a jury found the Defendant guilty of the crime of bank fraud in the United States District Court for the Eastern District of New York. (Ex. No. 5). On November 4, 2014, an order of forfeiture was entered against the Defendant in the amount of $51,166,000 (Ex. No. 9). The amount includes the $28,000,000 the Defendant obtained from Signature Bank through the check kiting scheme and $23,166,000 obtained from investors of Synergy and other companies, as is evidenced from the forfeiture request by the United States Attorney for the Eastern District of New York. (Ex. No. 9).

Resolution of these adversary proceedings require the Court to determine if the principles of collateral estoppel apply to the Defendant's criminal conviction, resulting in judgment in favor of the Plaintiff. Here, the Plaintiff seeks to show that the Defendant breached his fiduciary duty to the Debtors in committing the criminal act of check kiting that caused monetary damages to the Debtors. Plaintiff's claims against the Defendant in both cases are nearly identical and include, *inter alia*, a violation of N.Y.B.C.L. § 720 and common law breach of fiduciary duty.

## DISCUSSION

**Trustee's Standing**

"Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia,* on the rights of the debtor and on certain rights of the debtor's creditors." *St. Paul Fire & Marine Ins. Co. v. PepsiCo*, *Inc.*, 884 F.2d 688, 700 (2d Cir.1989) (citing 11 U.S.C. §§ 541, 544 and 547). The trustee stands in the shoes of the debtor and may bring actions that the debtor could have brought prior to the bankruptcy filing. *Shearson Lehman Hutton*, *Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991). Among those claims the trustee may assert are claims against corporate insiders alleging injury to the debtor. *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 122 (Bankr. S.D.N.Y. 2011). "[W]hile normally the fiduciary obligation of officers, directors and shareholders is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee." *Mitchell Excavators*, *Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984) (citing *Pepper v. Litton*, 308 U.S. 295, 306–7, 60 S.Ct. 238, 84 L.Ed. 281 (1939)).

Here, the Trustee instituted these adversary proceedings alleging, *inter alia*, that the Defendant, while acting as President and CEO of PHS Group and President of Quality, breached his fiduciary duty by engaging in an illegal check kiting scheme resulting in monetary damage to the Debtor. Because the Trustee seeks to recover damages caused by the improper conduct of an insider and/or control person of the Debtors for the benefit of their respective estates, the Trustee has the requisite standing to bring these actions.

**Legal Standard**

Preliminarily, the Court must address the effect of the Defendant's failure to appear at the trial. The Defendant filed answers in both adversary proceedings but did not otherwise defend

6

either action. The Court will enter judgment against the Defendant if the evidence put forth by the Plaintiff is sufficient to establish a *prima facie* case of the alleged causes of action. *See Leviton Mfg. Co. v. Fastmac Performance Upgrades*, *Inc.*, No. 13 CIV. 01629 LGS, 2014 WL 2653171, at *2 (S.D.N.Y. June 13, 2014).

**Collateral Estoppel**

The Trustee relies on the application of collateral estoppel to establish the Defendant's liability for his conduct. For the principals of collateral estoppel to apply, the following requirements must be met:

> (1) [T]he issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986). Further, a defendant convicted of a criminal offense is precluded from "denying facts in a later civil suit that were actually litigated and adjudicated in the earlier criminal proceeding." *Tyco Int'l*, *Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 561 (S.D.N.Y. 2010) (citing *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 157, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)).

The Trustee relies on the check kiting conviction to establish the Defendant's liability in these adversary proceedings. The Court finds that the bank fraud was actually litigated in the criminal trial, and the determination at trial regarding check kiting was essential to the guilty verdict returned on the bank fraud count. The conviction for bank fraud resulted from jury findings that Faibish orchestrated a check kiting scheme. Further, there is no indication that Faibish did not have full and fair opportunity to litigate the issues in the criminal proceeding.

7

Therefore, the remaining issue for the Court to determine is whether the check kiting conviction is sufficient to establish that the Defendant is liable for breach of his fiduciary duties, either under the relevant statute or as a matter of common law.

**First and Second Causes of Action: N.Y.B.C.L. § 720 and Breach of Fiduciary Duty**

In the first cause of action, the Trustee seeks damages for the Defendant's statutory violation of section 720 of the New York Business Corporation law. N.Y.B.C.L. § 720 states:

> (a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:
> (1) Subject to any provision of the certificate of incorporation authorized pursuant to paragraph (b) of section 402, to compel the defendant to account for his official conduct in the following cases:
> (A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.
> (B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.
> (C) In the case of directors or officers of a benefit corporation organized under article seventeen of this chapter: (i) the failure to pursue the general public benefit purpose of a benefit corporation or any specific public benefit set forth in its certificate of incorporation; (ii) the failure by a benefit corporation to deliver or post an annual report as required by section seventeen hundred eight of article seventeen of this chapter; or (iii) the neglect of, or failure to perform, or other violation of his or her duties or standard of conduct under article seventeen of this chapter.
> (2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness.
> (3) To enjoin a proposed unlawful conveyance, assignment or transfer of corporate assets, where there is sufficient evidence that it will be made.
> (b) An action may be brought for the relief provided in this section, and in paragraph (a) of section 719 (Liability of directors in certain cases) by a corporation, or a receiver, trustee in bankruptcy, officer, director or judgment creditor thereof, or, under section 626 (Shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor), by a shareholder, voting trust certificate holder, or the owner of a beneficial interest in shares thereof.
> (c) This section shall not affect any liability otherwise imposed by law upon any director or officer.

N.Y. B.C.L. § 720 (McKinney 2015). "BCL 720 embraces common-law and statutory causes of action imposing liability on directors and covers every form of waste of assets and violation of duty whether as a result of intention, negligence, or predatory acquisition." *Capital Distribution Servs.*, *Ltd. v. Ducor Express Airlines*, *Inc.*, No. 04 CV 5303 NG VVP, 2007 WL 1288046, at *2 (E.D.N.Y. May 1, 2007) (quoting *Amfesco Industries*, *Inc. v. Greenblatt*, 172 A.D.2d 261, 265 (N.Y. App. Div. 1991)).

Here, the Plaintiff alleges that as President of PHS Group, the Defendant had a statutorily imposed fiduciary duty to act in the best interest of PHS Group. The Defendant breached his statutory duties by engaging in an illegal check kiting scheme and unlawfully disposing of and misusing corporate assets committed to his charge. In his Answer, the Defendant admits he was the President of PHS Group and had a "duty not to waste or divert the assets of PHS." (Complaint and Answer No. 12-08445 doc. 1 para. 25 and doc. 8 para. 4 and 5). While the Defendant "denies that he [wasted or diverted the assets of PHS] and affirmatively states that at no time did he act in furtherance of his own personal interest at the expense of PHS," the Court finds that the Defendant's criminal conviction with regard to the bank fraud and check kiting scheme are sufficient grounds upon which to find the Plaintiff has made a *prima facie* case of the Defendant's liability for violation of his duties under § 720. (Answer No. 12-08445 doc. 8 para. 5). The Court further finds that the Defendant cannot be held liable under § 720 with regard to Quality as there is insufficient evidence in the record to find that Faibish is an officer or director of Quality, as is required by the statute.

In the second cause of action, the Trustee seeks damages for breach of the Defendant's fiduciary duties to the Debtors under New York common law. Under New York law, the elements of a cause of action for breach of fiduciary duty are "(1) the existence of a fiduciary

9

relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Mendelsohn v. Roalef* (*In re E.D.B. Constr. Corp.*), No. 11-76129-REG, 2013 WL 6183849, at *10 (Bankr. E.D.N.Y. Nov. 26, 2013) (citing *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC),* 458 B.R. 87, 127 (Bankr. S.D.N.Y. 2011)). Under New York law, a fiduciary duty arises when "one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." *Grumman Olson Indus. Inc. v. McConnell* (*In re Grumman Olson Indus.*, *Inc.*), 329 B.R. 411, 427 (Bankr. S.D.N.Y. 2005) (quoting *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.Supp. 285, 289 (S.D.N.Y.1995)). In New York, an officer of a corporation also owes a fiduciary duty to the corporation. *Silverman v. H.I.L. Assocs. Ltd. (In re Allou Distributors*, *Inc.)*, 387 B.R. 365, 410 (Bankr. E.D.N.Y. 2008) (citing *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 165 (2d Cir. 2003)). Fiduciary duties include conducting corporate affairs "'in good faith and with conscientious fairness, morality and honesty in purpose'" and showing "'good and prudent management of the corporation.'" *Mendelsohn v. Roalef (In re E.D.B. Constr. Corp.)*, No. 11-76129-REG, 2013 WL 6183849, at *10 (Bankr. E.D.N.Y. Nov. 26, 2013) (citing *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 127 (Bankr. S.D.N.Y. 2011) (quoting *Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 569 (1984))). Therefore, the Defendant could be liable to both Debtors for a breach of his fiduciary duties under common law.

With regard to Quality, while the Defendant denies being the President of the corporation, the Court finds sufficient evidence on the record, including evidence offered at trial, to conclude that Faibish "assume[d] control and responsibility" over Quality. *Grumman Olson Indus., Inc. v. McConnell (In re Grumman Olson Indus., Inc.*), 329 B.R. 411, 427 (Bankr.

S.D.N.Y. 2005). The Court also takes judicial notice that the President of Quality from 2007 through 2010 testified that he took direction from the Defendant. Thus, the Court finds that a fiduciary duty relationship existed between the Defendant and Quality under applicable common law.

The Plaintiffs aver that the Defendant's misconduct is established from the acts that resulted in his criminal conviction for bank fraud. Pursuant to 18 U.S.C.A. §1344, bank fraud is defined as "a scheme or artifice-(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." *United States v. Klein*, 216 F. App'x 84, 88 (2d Cir. 2007). Check kiting is almost invariably found by the courts to be a "scheme or artifice to defraud." *United States v. Burnett*, 10 F.3d 74, 78 (2d Cir. 1993). The Second Circuit describes "check kiting" as occurring when:

> a person knowingly deposits a worthless check which is immediately credited to the depositor's bank account. This increases the balance for a few days. In the meantime, typically, a check is drawn on the inflated balance and deposited in another account that is involved in the kiting scheme. This process is continued in a circular manner, usually among a number of accounts, to stave off the banks' recognition that there are insufficient funds to cover the checks.

*United States v. Burnett*, 10 F.3d 74, 76 (2d Cir. 1993).

In the District Court Judge's Memorandum and Order denying the Defendant's motion for a judgment of acquittal and, in the alternative, a motion for a new trial, Judge Vitaliano found that there was "more than enough proof for the jury to find Faibish guilty of [check kiting]." *United States v. Faibish*, No. 12-CR-265 ENV, 2014 WL 4273299, at *1 (E.D.N.Y. Aug. 28, 2014). As part of the indictment of Faibish, the government charged the defendant with engaging in an extensive check kiting scheme. (Ex. 4 Indictment ¶7-11). The Court in its charge to the jury

stated that the "kite alleged in the indictment is one version of . . . a scheme to defraud." (Ex. 10 Transcript at 1173). Thus, if the jury were to find that the Defendant engaged in check kiting, he would be guilty of bank fraud. The jury found the Defendant guilty of bank fraud. In *In re Bennett Funding Grp.*, *Inc.*, the Court could not conceive any successful argument that committing bank fraud would not be a breach of one's fiduciary duty to a corporation. 367 B.R. 269, 291 (Bankr. N.D.N.Y. 2007).

The Defendant was found to have committed a massive bank fraud and utilized his role as a fiduciary to the Debtors to make them an integral part of the crime—using them as "vehicle[s] to execute a $1.3 billion 'check kiting' scheme." *United States v. Faibish*, No. 12-CR-265 ENV, 2014 WL 4273299, at *1 (E.D.N.Y. Aug. 28, 2014). Faibish, as President of PHS Group and control person of Quality, had a duty to conduct the corporate affairs of both Debtors in good faith and with fairness and honesty. Instead, the Defendant engaged in misconduct that ultimately resulted in the demise of the Debtors by leaving them insolvent. As Judge Vitaliano concluded, the Defendant used the Debtors to "engage[] in a series of fictitious . . . transactions [between the companies] . . . creating off-setting invoices, checks, and accounting records, hoping to add a sense of business regularity to their swindle." *United States v. Faibish*, No. 12-CR-265 ENV, 2014 WL 4273299, at *1 (E.D.N.Y. Aug. 28, 2014). As long as the scheme continued, the Defendant could use inflated account balances and be able to purchase additional inventory. *Id.* This Court finds that the check kiting scheme orchestrated by the Defendant was a breach of the Defendant's fiduciary duty to the Debtors.

**Damages**

While the existence of a duty and misconduct are clear, the third element of a cause of action for breach of fiduciary duty the Plaintiff must prove is that the "damages directly caused by the defendant's misconduct." *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC),* 458 B.R. 87, 127 (Bankr. S.D.N.Y. 2011). Pursuant to the second cause of action for breach of fiduciary duty, the Plaintiff requests that the Defendant be held liable for all of the damages caused by the breach. At trial, the Plaintiff put forth that had it not been for the check kiting scheme, the Debtors' creditors would not have conducted and continued to do business with the Debtor. The scheme created inflated account balances and fictitious receivables and revenue. Thus, the Plaintiff posits that the damages to the Debtors should be measured by the number of claims or amount of claims filed in each of the cases. The record made by the Trustee supports a finding that the Defendant's scheme caused the destruction of seemingly viable companies. In fact, Quality's creditors forced it into bankruptcy. The record was not challenged by the Defendant. While the Court recognizes that arguments could have been made that the scheme might not have caused the demise of the Debtors, no such defense has been put forth by the Defendant. The Court finds that under common law, the Defendant owed a fiduciary duty to the Debtors, and having breached his duties, the Defendant is liable for the total amount of allowed claims filed in the two cases.

## **CONCLUSION**

The Defendant has failed to interpose any opposition to this action by the Trustee. Neither the Defendant, nor his counsel appeared at the trial on this matter. The Trustee has met his burden by making a prima facie case on the First Cause of Action as to PHS Group, and on the Second Cause of Action as to PHS Group and Quality. The Trustee shall submit a proposed judgment consistent with this Decision After Trial upon completion of the claims objection process.

Dated:  Central Islip, New York
       June   4, 2015                        By: */s/ Robert E. Grossman*
                                             Robert E. Grossman,
                                             United States Bankruptcy Judge